UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OWEN C. HOLT,

                                        Plaintiff,

                                                                                            DECISION AND ORDER

                                                                                            04-CV-6244L

                          v.

ROADWAY PACKAGE SYSTEMS, INC.
(FAG),

                                        Defendant.
_____

       Plaintiff Owen C. Holt ("Holt") brings this action alleging discrimination in employment on the basis of race, color and national origin, as well as failure to reasonably accommodate an unspecified disability, against his former employer, FedEx Ground Package System ("FedEx Ground"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. FedEx Ground now moves for summary judgment. For the reasons stated, FedEx Ground's motion is granted and the complaint is dismissed.

       Holt had been employed by FedEx Ground, and its predecessor, for five years. On June 24, 2002, FedEx Ground terminated Holt's employment, citing performance issues including Holt's consistent and repeated failure to arrive to work on time, failure to work the required number of hours, failure to complete paperwork accurately, failure to create or maintain personnel files for subordinates, and delegation of certain of his duties to others.

Two weeks after his termination, Holt filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging discrimination. That complaint was referred to the EEOC, which made no finding of discrimination but issued a right- to-sue letter which Holt received on March 5, 2004. This complaint was timely filed on May 28, 2004.

## FACTUAL BACKGROUND

On July 7, 1997, Holt, an African-American man of Jamaican descent, was hired by FedEx Ground's predecessor as a Pickup and Delivery ("P&D") Coordinator at the company's Rochester Terminal. Ultimately, Holt was promoted to the position of Service Manager II in January of 2002. In that capacity, Holt was responsible for overseeing outbound shipments on the terminal's loading dock, the unloading and check-in of packages arriving from other FedEx Ground facilities, the assignment and supervision of package handlers and data entry employees, and the engagement of independent contractors to pick up and deliver packages. Holt was supervised by Terminal Manager Bryce Newton ("Newton").

Following Holt's assumption of the Service Manager II position, Holt was repeatedly reprimanded by Newton for failing to arrive to work on time and for leaving work without completing his assigned responsibilities. Newton requested that Holt begin reporting to work on time in six separate discussions between January 9, 2002 and January 31, 2002. Nonetheless, Holt admits that prior to January 31, 2002 he was often late for work, and estimates that from January 31, 2002 until the date of his termination in June 2002, he arrived late to work every single day – 100% of the time. (Dkt. #36, Exh. C).

Holt also admits that he did not consistently work the full ten (10) hours required for his shift, instead working an average of only eight (8) or nine (9) hours. Newton reprimanded Holt and requested that he work the full ten-hour shift in five separate discussions between January 17, 2002 and January 31, 2002. (Dkt. #36, Exhs. D, H, I).

On February 14, 2002, Holt contacted FedEx Ground's Regional Human Resources Manager, Jayne Powell, and complained that Newton was being overly critical of his timeliness, hours worked, and performance. Holt, Powell and Newton met to discuss Holt and Newton's difficulties. As a result of the discussion, Holt and Newton agreed that in order to accommodate the work schedule of Holt's wife and attendant child-care needs, Holt's report-to-work time would be adjusted to 3:00pm instead of 2:30pm. At the close of the meeting, Powell proposed that Holt and Newton "turn over a new leaf" with respect to their working relationship. Holt and Newton thereafter met, shook hands and pledged to start anew with no hard feelings.

Despite their temporary truce, it is undisputed that Holt continued to arrive after his designated 3:00pm start time and to work abbreviated shifts thereafter, and Newton upbraided Holt on several occasions for tardiness, failing to work a full shift, failing to complete Daily Data Reconciliation (a process used to confirm that independent contractor paperwork and FedEx Ground computers accurately reflected the delivery of packages), failing to timely assemble personnel files for new subordinate employees, and for generating allegedly incomplete, incorrect and even allegedly falsified written reports and other paperwork.

On April 29, 2002, Newton wrote a memo to his supervisor, Assistant Regional Director of Operations Bill McDermott, stating that he believed Holt lacked integrity and that his performance

issues were jeopardizing the quality of service that FedEx Ground's Rochester Terminal strived to provide. Newton recommended that Holt be terminated. Pursuant to FedEx Ground's policies, Newton's termination recommendation was reviewed by the FedEx Ground Human Resources Department and Legal Department, after which it was determined that Holt should be afforded additional time to improve his performance.

On June 13, 2002, Holt found what he considered to be sensitive information concerning his employment on a printer in the office, which he believed Newton had printed. Holt called Powell, complaining that he suspected Newton was trying to gather evidence in order to "get rid" of him. Powell suggested that Holt discuss his performance issues with Newton directly. Holt confronted Newton, stating that he believed Newton was scrutinizing his performance and documenting their interactions, and vowed to do the same.

On June 24, 2002, after confirming that Holt's attendance, time records and paperwork had not improved, FedEx Ground terminated Holt's employment.

In his complaint, Holt claims: (1) discriminatory termination; (2) failure to promote; (3) failure to provide him with reasonable accommodations; (4) harassment based on unequal terms and conditions of employment; and (4) retaliation for complaining about discrimination or harassment that had been directed toward him. Specifically, Holt claims that his supervisor, Newton: (1) whistled "Dixie" in and around the office; (2) frequently cursed in the office; (3) would "harass and badger" Holt over his arriving to work late and leaving early, and other performance issues, causing him to feel alienated; (4) refused to permit Holt to delegate managerial responsibilities to his subordinates; (5) micromanaged Holt and checked reports of the hours he had worked, but did not

do so for other managers; (6) frequently accused Holt of misreporting productivity numbers and doing the "bare minimum to get by"; (7) punished other managers less often, and less severely, for mistakes than Holt; (8) reassigned Holt to a different shift, with the knowledge and intent that Holt's personal family schedule would make it difficult for him to get to work on time; and (9) permitted one of Holt's coworkers to frequently flatulate in Holt's presence. Holt also complains that an independent contractor hired by FedEx Ground called him a "boy" and a "porch monkey," that a fellow manager once referred to another facility as being "nigger rigged" and described Jamaica, Holt's country of origin, as a "Third World Country," and that another coworker criticized the sentiments expressed in Reggae music. It is undisputed that Holt never complained to FedEx Ground management or human resources personnel about any of these actions or comments, with the exception of the "porch monkey" comment, which Holt claims he reported to his then-supervisor and to a former Terminal Manager, Frank Rome. Holt is unaware of whether the independent contractor was ever disciplined over that incident.

**DISCUSSION**

**I. Summary Judgment in Discrimination Cases**

The general principles regarding summary judgment[1] apply equally to discrimination actions.

---

[1] When deciding a motion for summary judgment brought pursuant to FED. R. CIV. P. 56, a court's responsibility is to determine whether there are issues to be tried. *Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir.2001). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' . . . An issue of fact is 'genuine' if 'the

(continued...)

*See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993))(reiterating that trial courts should not "treat discrimination differently from other ultimate questions of fact."). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)(summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

Moreover, although courts must construe plaintiff's *pro se* pleadings liberally and interpret them as raising the strongest arguments that they suggest, *see Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994), "proceeding *pro se* does not otherwise relieve [plaintiff] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *16 (S.D.N.Y. 2003)(citing cases); *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y.1995)(a "*pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment")(citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

---

[1](...continued)
evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001), *quoting Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.     Plaintiff's Discrimination Claims**

Plaintiff's claims of employment discrimination pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). Once plaintiff has established a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).

Affording Holt the liberal interpretation and favorable inferences due to him both as a *pro se* plaintiff and as a nonmovant, I find that Holt has nonetheless failed to establish circumstances giving rise to an inference of discrimination, and therefore has failed to demonstrate a *prima facie* case.

Holt generally alleges that his supervisor, Newton, closely monitored and micromanaged his work performance, was overly critical of Holt's mistakes, and ultimately terminated Holt, due to Holt's race, color, and/or national origin. Holt also claims that Newton cursed in the office, and frequently whistled the tune "Dixie," until another coworker informed Newton that it could be deemed offensive.

It is well settled that an inference of discrimination may be established by a showing that the employer treated workers in a protected group less favorably than others outside of the group, criticized the plaintiff in a degrading manner, or made invidious comments concerning other members of the protected group. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Holt has made no such showing here. To the contrary, Holt makes no claim that Newton ever used racially-charged terms or criticized him in a racially derogatory manner. Although Holt claims that on two or three occasions, a fellow manager and independent contractors of FedEx Ground used offensive racial terms in his presence, such comments by non decision-makes are insufficient to support an inference of discrimination. *See Kaplan v. Multimedia Entertainment, Inc.*, 2005 U.S. Dist. LEXIS 40351 at *23 (W.D.N.Y. 2005) (stray remarks by non-decision-maker, unrelated to the employment decision, do not support an inference of discrimination by the employer). There is no evidence that such comments were made in Newton's presence or over condoned by him.

To the extent that Newton criticized Holt for his tardiness, for failing to work the required number of "core" hours, and for deficiencies in completing paperwork, there is no indication that Holt's close oversight and criticism of plaintiff was occasioned by anything other than the undisputed, *bona fide* deficiencies in plaintiff's performance. Although Holt asserts that some of the deficiencies in his paperwork were a result of inadequate training, and contends that FedEx Ground failed to notice and/or discipline shortcomings by other managers, such as inaccurate reporting, yelling at coworkers, periodic tardiness and open flatulence, Holt does not argue that the alleged performance deficiencies on the part of his comanagers approached or equaled the level of

his own, and moreover concedes that the crux of FedEx Ground's legitimate nondiscriminatory reason for terminating him is true. Specifically, plaintiff admits that he was late to work by about half an hour *every single day* beginning in January 2002 through the date of his termination, consistently worked only eight or nine hours of his ten-hour shift, delegated managerial responsibilities to his subordinates, (Dkt. #42, Plaintiff's Statement of Material Facts in Dispute at 11, 12) and purposely chose to complete (or not complete) paperwork in a manner inconsistent with his employer's instructions, so he could "save time in order to get out of the building" more quickly. (Dkt. #36, Exh. H). Based on these admitted deficiencies which were hardly *de minimus*, it is remarkable that plaintiff continues to claim that his termination was caused by reasons unrelated to poor performance. Holt's claim that Newton's "micromanagement" was motivated by discriminatory animus is further undermined by the uncontroverted evidence that Newton criticized and disciplined Caucasian managers for their errors as well. (Dkt. #24 at ¶51 et seq., Dkt. #32 at ¶¶ 8, 9).

Although direct evidence of discriminatory motive is not necessary to survive summary judgment, plaintiff must produce at least some circumstantial evidence that shows discriminatory animus. *See Schwapp*, 118 F.3d at 110. *See also Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir. 1988) (even where a *prima facie* case is established, conclusory assertions of discrimination are insufficient to create an issue of material fact as to pretext). Thus, even if Holt has sufficiently set forth a *prima facie* case of discrimination, his speculative allegations of discriminatory animus are insufficient to rebut the legitimate, non-discriminatory reasons articulated by FedEx Ground for counseling Holt and terminating his employment; *to wit*, Holt's constant tardiness, failure to work a full shift and failure to consistently perform the requirements of his position. Indeed, it is difficult

to imagine a more appropriate basis for an employer to terminate one's employment than an employee's daily lateness, refusal to work the required number of hours, and willful violation of the employer's policies and procedures over a period of several months, despite counseling and instructions to the contrary, and several months' time to improve. *See e.g.*, *Jones v. Yonkers Public Schools*, 326 F.Supp.2d 536, 53-544 (S.D.N.Y. 2004) (misconduct, poor performance, and violation of employer's rules and procedures are legitimate, non-discriminatory reasons for termination); *Gomez v. Pellicone*, 986 F. Supp. 220, 228 (S.D.N.Y. 1997) (excessive lateness and poor performance are legitimate, nondiscriminatory reasons for termination). As such, I find that Holt has failed to set forth evidence which would support an inference of discrimination, or which is capable of rebutting FedEx Ground's legitimate, nondiscriminatory reason for his termination. Holt's discrimination claims must therefore be dismissed.

When viewed as a claim of discrimination in the form of a hostile work environment, Holt's claims are similarly without merit. In order to prevail on a claim that unlawful harassment has caused a hostile work environment in violation of Title VII, a plaintiff must establish two elements. First, plaintiff must show that his workplace was permeated with "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Second, plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *See Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

To meet the first requirement, plaintiff must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (internal quotation marks omitted). In so doing, plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

In *Harris*, the Supreme Court set forth a non-exhaustive list of factors relevant to determining whether a given workplace is permeated with discrimination so "severe or pervasive" as to support a Title VII claim. These include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance"; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted to the plaintiff. *Harris*, 510 U.S. at 23. *See also Hannon v. Wilson Greatbatch, Ltd.*, 2002 U.S. Dist. LEXIS 8862 (W.D.N.Y. 2002).

The Second Circuit has instructed that the Court should consider the totality of the circumstances in determining whether plaintiff has submitted evidence sufficient to support a finding that a hostile work environment existed. *See Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citing *Harris*, 510 U.S. at 23). Thus, the relevant factors must be considered "cumulatively," so that the Court can "obtain a realistic view of the work environment." *Id. See also Hannon*, 2002 U.S. Dist. LEXIS 8862 at *27. Applying these principles, I find that Holt's claim for hostile work environment must fail.

The conduct of which Holt complains is comprised of: (1) Newton's cursing and whistling "Dixie" in the office; (2) Newton's "micromanagement" and criticism of plaintiff for tardiness, insufficient paperwork and other performance issues; (3) Newton's refusal to permit Holt to delegate managerial responsibilities to his subordinates; (4) Newton's comment to Holt that Holt was misreporting productivity numbers and doing the "bare minimum to get by"; (5) one of Holt's fellow manager's flatulating in Holt's presence; (6) an independent contractor's calling Holt a "boy" and a "porch monkey"; (7) a fellow manager's alleged reference to another facility as being "nigger rigged"; (8) a fellow manager's discussion with another coworker in which he referred to Jamaica as a "Third World Country," and (9) a coworker's criticism of the themes expressed in Reggae music.

In assessing hostile work environment claims, the Court must remain mindful that "Title VII is not a 'general civility code.'" *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Although Title VII "protects employees from improper discriminatory intimidation[,] it does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors." *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000). Thus, in the absence of evidence suggesting that a plaintiff's membership in a protected class was relevant, the fact that all employees are treated similarly, if brusquely, generally suggests that their mistreatment shared a common cause that was unrelated to their protected status. *See e.g.*, *Brown v. Henderson*, 257 F.3d 246, 254 (2d Cir. 2001). In order to establish his claim of disparate treatment, plaintiff must therefore produce

evidence that his employer treated him differently from others, and that the employer did so because of plaintiff's race. *Oncale*, 523 U.S. at 79-80.

As an initial matter, Holt's claims concerning Newton's oversight of his performance, including Newton's scrutiny of Holt's arrival time, hours and written reports, are all personnel issues unrelated to his race. *See Woodcock v. Montefiore Medical Center*, 2002 U.S. Dist. LEXIS 2965 at *19 (E.D.N.Y. 2002) (claims concerning denial of vacation requests, changes to work hours, and denial of transfer do not support a hostile work environment claim).

Furthermore, Holt admits, and his African-American coworkers also testified, that Newton never uttered any offensive racial epithets or insults. (Dkt. #33, #34). Holt nonetheless urges that Newton's use of generalized curse words created a hostile work environment because "swearing around the office [is not] acceptable at any level in a professional working environment," and thus "shows a blatant disregard for people, especially minorities in his presence." (Dkt. #42, Plaintiff's Statement of Facts in Dispute at 2). As a practical matter, there is no reason to believe that Newton's use of racially-neutral curse words would have been more offensive to minority employees than to non-minorities. In any event, Holt has produced no evidence whatsoever that Newton used different language with him than with his coworkers. In fact, Holt's coworkers consistently testified that Newton always treated everyone equally. (Dkt. ##30-34).

Although Newton's whistling of the song "Dixie" invoked a tune historically associated with the Civil War-era Confederacy and racist postbellum blackface minstrelsy, it is undisputed that upon being informed by another employee of the song's potential to offend, Newton immediately apologized, explaining that he had been unaware of the song's implications, and thereafter excluded

it from his office repertoire. The "boy," "porch monkey," and "nigger-rigged" terms alleged to have been used on separate and isolated occasions by independent contractors and one of Holt's fellow managers, while unquestionably crude and offensive, comprise stray remarks which do not rise to the level of a hostile work environment when considered in the totality of Holt's five-year tenure with FedEx Ground. *See Hannon*, 2002 U.S. Dist. LEXIS 8862 at *27 (the "mere utterance of an epithet which engenders offensive feelings" is insufficient to sustain a hostile work environment claim); *Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001) (conduct must be severely threatening or humiliating to rise to the level of hostile work environment); *Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998) (occasional offensive racial comments are not sufficiently severe or pervasive to establish a hostile work environment); *Schwap v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (establishment of a hostile work environment requires a steady barrage of racial comments, rather than isolated racial slurs); *Tomka v. Siler Corp.*, 66 F.3d 1295, 1304 n.5 (2d Cir. 1995) (occasional incidents of harassment will not justify relief) .

Similarly, the negative opinions expressed by Holt's coworkers which concerned Jamaica's political and economic status, and the themes contained in Reggae music (a genre developed in Jamaica in the 1960's), are isolated statements, and are manifestly not severe, pervasive, threatening or humiliating enough to have given rise to a hostile work environment. *See Benette v. Cinemark U.S.A., Inc.*, 295 F. Supp. 2d 243, 251 (W.D.N.Y. 2003) (a few isolated incidents or "boorish or offensive use of language" are insufficient to demonstrate a hostile work environment).

Plaintiff does not claim that any of the foregoing comments or actions interfered with the performance of his duties, or caused any psychological harm. Even more significantly, with the

exception of the independent contractor's "porch monkey" comment, which Holt claims he related to a previous Sort Manager and Terminal Manager with unknown results, there is no basis whatsoever for imputing knowledge of those comments or actions to FedEx Ground.  It is undisputed that at the outset of his employment, Holt received a copy of FedEx Ground's "People Guide" which described its Open Door Policy for the lodging of discrimination complaints, and that information concerning FedEx Ground's EEO/Harassment Reporting Procedure was posted in the office where Holt worked.  Nonetheless, Holt testified that although he was aware of his right to make complaints pursuant to those policies, he never complained to FedEx Ground about Newton's whistling "Dixie," or any of the other comments by coworkers relating to his race or national origin.  (Dkt. #36, Exhs. P, Q, R).  Holt's two complaints to Powell related solely to Newton's close oversight of his performance, and Holt did not discuss his race, color, national origin, or any suspicion that he was a victim of discrimination, with her.  *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (employer has an affirmative defense against hostile work environment claims where it demonstrates that it exercised reasonable care to prevent and correct harassing behavior, and plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities); *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) (the "existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of [the *Burlington*] defense"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767 (2d Cir. 1998) (employer is not generally liable for conduct by a plaintiff's coworkers or by non-employees, unless the employer provided no reasonable avenue of complaint, or knew of the harassment but failed to address it).

In light of the foregoing, Holt has failed to set forth sufficient evidence to establish a *prima facie* claim of discrimination in the form of a hostile work environment, and that claim is dismissed.

### III.     Failure to Promote

Plaintiff also claims that FedEx Ground failed to consider and/or hire him for: (1) an Engineer Level III position for which he interviewed in August 1999; (2) an Engineer II position; (3) a Customer Service Representative position about which he inquired in the summer or fall of 2001; and (4) a Regional Operations Engineering Manager ("ROEM") position.

To successfully establish a *prima facie* case of discriminatory failure to promote, plaintiff must prove that: (1) he is a member of a protected class; (2) he applied for and was qualified for the job; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having plaintiff's qualifications. *See McDonnell Douglas Corp.*, 411 U.S. 792; *Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998). Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason why the plaintiff was not promoted. If a legitimate, nondiscriminatory reason is established, the burden returns to plaintiff, to demonstrate that the reason put forth by the employer is pretextual. *See Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 387-388 (2d Cir. 2000).

Although the parties dispute whether Holt ever made any formal applications for promotion, Holt has failed to demonstrate that he was ever qualified for the positions of ROEM, Engineer II and/or III. Specifically, it is undisputed that a Bachelor's degree in Industrial Engineering and five (5) years of P&D experience were prerequisites for the ROEM position, a bachelors's degree in

Engineering and in-depth P&D knowledge was required for the Engineer II position, and a Bachelor's of Science Degree in Engineering or Engineering Technology were required for the Engineer III position, none of which plaintiff possessed.

With respect to the Customer Service Representative position for which Holt claims to have applied in the summer or fall of 2001, Holt does not dispute FedEx Ground's assertions that: (1) the person to whom Holt claims he submitted a resume was never employed by FedEx Ground; (2) no such positions existed at FedEx Ground from March 2001 through the present; and (3) no persons have been employed by FedEx Ground in such a position from March 2001 through the present. Because there is no evidence that any such position was "open" or that FedEx Ground continued to seek applications after Holt's alleged 2001 attempt, this claim also fails.

**IV.     Retaliation**

Claims of retaliation are analyzed under the familiar *McDonnell Douglas* burden-shifting rules. *See Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir. 1999). To make out a *prima facie* claim for retaliation, a plaintiff must show: (1) that she participated in a protected activity; (2) that the defendant knew of the protected activity; (3) that she suffered an adverse employment action; and (4) that a causal connection exists between plaintiff's protected activity and the adverse employment action. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000). Once plaintiff makes out a *prima facie* case of retaliation, the burden shifts back to the employer to show that there was a legitimate, non-retaliatory reason for its actions. If the employer meets its burden, the burden shifts back to the plaintiff to show that "there is sufficient

potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Richardson*, 180 F.3d at 443, *citing Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998). Protected activity includes actions taken to report, oppose or protest unlawful discrimination. *See Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

Here, Holt does not identify, nor does the record reveal, any protected activity on his part which a rational finder of fact might reasonably find to be causally connected to his termination.[2] Although Holt complained to Powell that he believed Newton was overly critical of his performance and was "out to get" him, Holt never suggested, to Powell or any other FedEx representatives, that he believed he was being discriminated or retaliated against on the basis of his race, color or national origin. Holt has thus fails initially to establish that he engaged in a protected activity, and moreover to establish any causal connection between his complaints to Powell about Newton, and his termination. As such, I find that Holt has failed to establish that the legitimate reasons advanced by FedEx Ground for terminating Holt were merely a pretext for impermissible retaliation, and Holt's retaliation claims must therefore be dismissed.

---

[2] Holt does allege that he complained to a former supervisor and a former Terminal Manager about the "porch monkey" comment made to him by an independent contractor. However, Holt offers no evidence to demonstrate when the complaint occurred or whether it is timely raised at this juncture, and makes no suggestion – nor is there any evidence in the record – that there is any causal relationship between that complaint and his ultimate termination. Indeed, the fact that Newton was not Holt's supervisor at the time the complaint was made suggests that the complaint would have occurred prior to Holt's promotion to the Service Manager II position, a factor which suggests that FedEx Ground was more interested in rewarding Holt than retaliating against him during that period.

## V.     Failure to Accommodate

Finally, plaintiff's claim that FedEx Ground failed to adequately "accommodate" some unstated disability pursuant to the Americans with Disabilities Act ("ADA") must be dismissed. Holt has made no attempt to allege or establish that he has a substantial mental or physical impairment limiting a major life activity, a record of such impairment, or that FedEx Ground regarded him as having such an impairment. *See* 42 U.S.C. §12102(2). To the contrary, Holt's administrative charge contains no such claim, and Holt has repeatedly stated, both at his deposition and in his responses to interrogatories, that he is not disabled in any way. (Dkt. #36,Exh. T). As such, plaintiff's ADA claim must be dismissed.

## VI.    Slander and Defamation claims

In his opposition papers, Holt also purports to raise generalized slander and defamation claims against FedEx Ground, apparently arising during his employment and/or in connection with his termination on June 24, 2002. As an initial matter, such claims are improperly raised as Holt has failed to obtain the written consent of FedEx Ground or leave of Court pursuant to Fed. R. Civ. Proc. 15 to amend his Complaint.   Moreover, the claims are insufficiently particularized and clearly time-barred under the applicable one-year state statute of limitations. *See* N.Y. C.P.L.R. §215. Accordingly, these claims are also dismissed.


**CONCLUSION**

For the foregoing reasons, FedEx Ground's motion for summary judgment (Dkt. #22) is granted and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
       August 21, 2007.